number 22-10604 and we have miss panuchio uh through zoom right jonathan okay goodbye to the st brendan students i hope that you found it interesting and that you still want to be lawyers and whenever you're ready miss foldies good morning your honors and may it please court margaret folders assistant federal public defender on behalf of victor vargas who is the appellant this is a speedy trial case involving the proper application of barker versus wingo factors after the presumption of prejudice has already been established just for purposes of a very quick timeline mr vargas was arrested in june of 2018 he was not they didn't actually bring formal charges against him at that time because he was in touch with one of his sources on the phone so that they thought it might be a good idea to try to see if he could cooperate up in new york so they allowed him to go up to new york and he tried for about three months to cooperate unfortunately the cooperation didn't work out and the government brought an indictment which they returned on september 25th 2018 he was not arrested for three years after that on august 18th 2021 and although the district court found that there was a three-year significant revenue between that there was a pandemic right well with respect to that mr vargas's case was actually pending for 18 months before covid was a pandemic so if the government had actually uh been diligent in what they were doing they would have resolved the entire case before covid came into being an issue so and beside that as an evidentiary matter the district court did find that covid that there was no evidence that covid impeded the arrest and with respect to we do have a situation here where but for your client agreeing to cooperate right if your client had not agreed to cooperate he would have been arrested and correct it is correct that he wanted to cooperate no no answer my question if your client had not agreed to cooperate he would have been arrested and then the process would have continued and he would have been brought before a magistrate judge yes if he had not the government probably a prosecutor in major crimes would have had to bring an indictment within the required limitations period we're talking about the indictment already being i mean there's a process when someone is arrested you have a certain amount of time as a prosecutor to indict someone and bring it before the grand jury okay this case is a post-indictment delay i understand that but my question to you is your client volunteered to cooperate with the government he confessed to everything that was uh to the fact that he had done a deal with an undercover agent and delivered two kilos of heroin and everything is recorded correct and you can see that there is no prejudice your client cannot show prejudice that's correct okay but the cooperation itself was not added into the speedy trial delay that we are talking about i understand that but but but for the fact that your client cooperated he would have been in jail the district court came up with a finding that he was not trying to evade law enforcement when he was in new york and under the law under ingram that finding alone precludes the court from finding that the that that factor about cooperation was can be held against the defendant because the issue isn't just whether he was trying to cooperate the issue is whether the government brought the case well in in a timely fashion but the the cooperation part of it was not part of the delay that we're talking about the case within three months after he was initially they brought the case in september 25th 2018 isn't that a case where he was you know indicted years later no this is the case where they brought the indictment but he wasn't arrested for years later all right so the cooperation arrest because he was initially arrested correct well they didn't bring the formal charges at the time i understand but he was initially arrested and obviously he cooperated and confessed to the allegations under ingram his cooperation and i'm just i understand not be held against him under ingram okay one of the ways one of the possible answers to judge lagoa's question is that cooperation is a two-way street and that in in as much as cooperation potentially favored your client in some ways by not letting him be arrested immediately trying to let him help the authorities to help himself it was also potential reward for the government too yes your honor that's that's correct so it's not a factor that weighs against anybody it's just a fact that he decided to cooperate and when things didn't work out he went back to the place where he resided normally lived in new york yes let me ask you about this case i speak only for myself and not for my colleagues this case it seems to me comes down to the finding of the district court that agent pallet was diligent am i wrong because factor one everybody agrees that the 35 month delay is easily presumptively prejudicial right so that weighs in favor of your client and everybody agrees that on factor three as a district court ruled that your client timely asserted his right to a speedy trial and everybody agrees that on factor four your client concedes that he can't show prejudice but he doesn't have to that's what you correct so it all comes down to factor two which are the reasons for the delay yes that's correct and within that factor it seems to me the critical critical issue is whether or not agent palat was diligent i don't think it's limited to that because agent palat would agree it's not limited to that but it seems to me that's the driving force because let me change the facts a little bit okay so these are i know that's not what this record shows but if you had an agent in miami who was calling the agents in new york every week sending them emails every week right doing all sorts of stuff every month trying to set up zoom meetings to make sure that they were on their game and were going to look for mr vargas you could make a pretty strong argument that that agent was diligent in doing what he needed to do to get someone arrested in a different jurisdiction and in that hypothetical that fact may weigh in the government's favor it might be negligence on the part of the agents in new york but not necessarily on the part of the case agent who was overall in charge of effecting the arrest here the circumstances are different the agent agent palat didn't do what i suggested in my hypothetical he did a fair amount less but the district court found that he was diligent so i i want to ask you about that right i think that's one component of it i think it's actually a little broader than that because agent palat was there and he received an email from his supervisor saying get the arrest done or have the case dismissed which is a pretty strong email to get from your supervisor so he was on notice that he was being negligent and the supervisor himself knew that the case was not being handled properly so but then agent palat actually after the email he did like a over the course of the year that email from the supervisor yes came when in the chronology january of 2019 so in october september is when the indictment was issued october they sent the indictment and the arrest warrant up to new york then for four months basically nothing happened in january of 2019 the supervisor sent that email so about five months later yes four to five months correct and and after that agent palat did not do anything uh except for well it was minimal efforts that he took but beyond that he left in july of 2019 and the supervisor was still there the supervisor who was very aware of the case and who called out the fact that there was negligence going on that supervisor was still there i thought that there was in between um there was some discrepancy or disagreement i guess about who was supposed to do it in terms of effectuate an arrest which was was it going to be new york i guess police or was the marshals or there was some disagreement about that and there with that email from the supervisor there could be no discrepancy because it's clear from that email that miami knew they were ultimately responsible for the arrest in the case and they either needed to get it done but you your client was allowed to leave the jurisdiction now he's in new york and so now they have to effectuate an arrest that's outside the jurisdiction and so you have to have the proper authorities effectuate the arrest and my understanding is is that whether i can't remember who it was whether it was the marshal service whoever it was said that they had gone to the so i mean what exactly was agent pallet supposed to do i guess i'm what what was agent pallet what do you believe would have been diligent first i would just like to complete what i was trying to say before agent pallet left in july of 2019 there was 25 months where the case after he left where not one agent from any office did one thing not one email and that was after the supervisor who was still in the miami office who was aware of the case but from july and two so you have the first year with where you're or february or march you have the first year with agent palat then you have two more years whether we understand that but during part of that you know from i'm going to say march of 2020 then the world stops so i'm going to count from july of 2019 to march of 2020 again the covet is a separate situation but i'm just going to finish the chronology there's there's three years of a delay one with palette two with the supervisor they both had extreme knowledge because the supervisor himself sent that email where he not some different part of the government they were part of the same dea agency and they were they had the same information if you look at what the district court did they'd rely that relied on clark clark's a completely different type of case because clark had different sovereigns and there was a genuine misunderstanding between the two of them about who was responsible for it's super clear that agent palat and the miami office itself was the ultimate responsible party for that arrest so it wasn't agent palat could not go to new york to arrest him he absolutely can't there's a plane those agents travel all the time and when agent palat is in you know ultimately responsible for making sure that arrest gets done or he's got to dismiss the case he's got to at some point decide that it's not working what he's doing sending an email every two months isn't working and not following up so he's got to do something different and that's what that whole email from the supervisor was about covid also just to like just to address that part even if you took the covid circumstance this case mr vargas's case is one of the few cases that i can absolutely say would not have been delayed by covid because first of all they already had the indictment so they didn't have to worry about getting a grand jury together in the middle of covid that indictment was already there and because he was not considered a flight risk and he wasn't ever they weren't ever worried about him evading uh he was the kind of defendant that you could have self-surrender how many my understanding from the record is that your client only reached out one time to talk about the cooperation or is that is that no he's no he spoke with the agents up in new york more than one time i don't know exactly how many the record doesn't say but it's more than one time when he when the agents wanted to talk to him he would talk to them i have a question for you miss folders it's a fact question um you say in your pleadings in a number of instances that basically the defendant resided at the same address the whole time and therefore the agents just had to go back a few times and they'd have found him and they'd have arrested him if they were even remotely diligent i understood however from the fact pattern and correct me if i'm wrong that there came a point in time when your client left the united states within this 35 month period of time he went to the dominican republic we know that because on july the 18 2021 immigration officials stop him when he's re-entering from the dominican republic do we know is there any record how long he was in the dominican republic not to my knowledge uh but there is no dispute that he lived in new york and that he was there pretty continuously but you understand the thrust of my question let's assume arguendo that he went to the dominican republic eight or nine months before he returned you're not suggesting the government should be tagged with that time frame are you there's no evidence in the record no i understand that but i am asking you to assume with me for a moment that he was actually out of the united states for a period of nine months by his own choice got on a plane in new york city and he flew to the dominican republic and he didn't and come back in we know the one thing we do know unambiguously is he re-entered on 7 18 that nine month period of time in my hypothetical when he was gone that would not be a period of time that would be counted against the government for purposes of speedy trial we would agree on that would we not if there was evidence in the record as to how much i'm asking you to accept my hypothetical let us assume arguendo he was out of the united states for nine months and didn't re-enter until 7 18 21 that nine month period of time would not count would it he couldn't charge the government with being dilatory sitting on their thumbs doing nothing when if they had gone to his house they couldn't find him because he's out of the country for nine months well i think the burden of the proof is on the government to establish i understand that i'm just trying to have you help me with a single question if he were gone for nine months that nine month period would not count against the government for purposes of speedy trial your answer to me is we don't know that he was gone for nine months and i accept that i'm simply asking if indeed it were so could that nine month period count against the government i think the government would still have to be diligent in their in their and one other thing about him coming back i mean what would their diligence require beyond going to his house well and that's the point they went once all right so they would have to show that they were actually trying to find him to arrest him that would be diligence and when he did arrive at the airport the immigration stopped him and then contacted dea and dea even at that point this is a month before he gets arrested they released him they didn't arrest him it had already been 34 months so what are we doing to arrest him what are we to make of that what inference do we draw from the fact that the immigration service released him it's very interesting and i'm just asking you what inference you would have the inferences is that the immigration and it's not inference it's in the evidence the immigration authorities actually reached out to dea they actually contacted agent palat who wasn't even working in miami anymore it shows that i understand that what inference should we draw from the fact immigration contacted dea didn't dea didn't say arrest them on the spot right let him go so what's the inference the inferences is that the dea and the immigrations one sovereign they're all working together they're agents of each other the negligence for the entire 35 months is attributable to each other to the government's excessive delay in this case that's what the inference is okay thank you taking you beyond your time but we'll give you all of it thank you miss panuccio good morning your honors ausa britney panuccio for the united states the district court correctly denied vargas's motion to dismiss because he concedes he cannot show any prejudice from the delay between his indictment and his ultimate rearrest every important fact of his offense was recorded and admitted when he was originally arrested and vargas needs to show actual prejudice because the district court found that the barker v wingo factors did not weigh heavily against the government and the record supports that fine let's talk about that in with regards to diligence what is the government's best evidence that the agents were diligent during this 35 month period your honor i think the foundational thing to point out is the standard of review when i understand what the standard is i'm asking you what evidence supports that finding yes your honor as was discussed when opposing counsel was at the podium agent plot did reach out to multiple different agencies in new york after vargas reneged on his promise to cooperate palat was left with working with agents in another district to effectuate the arrest so he spent 10 months entering information in multiple different fugitive databases including ncic and epic and the entry in epic is what ultimately led to vargas's arrest he contacted multiple different agents in new york both in new york in westchester the u.s marshals were involved um and i think we can't times how many times did he do that um opposing counsel says six times in her brief but that omits at least one email that i found from january 10th 2019 i don't think we can just count the number of emails however because the emails themselves allude to other communications and actions that were taken um for example in terms of emails and phone calls how many times did agent palat reach out to other human beings in new york during the 35 month period i don't have a specific number your honor and i think some of the emails were also sent a plot supervisor for example when he was away at so there are multiple different agents from south florida who were contacting people in in new york um so i don't i can't give you a specific number but i can say that when it was not effective with certain groups of agents in new york he was persistent in the sense that he reached out to other people and i think could he have done more absolutely but i think he was diligent enough and the district court fat made the factual finding that he was diligent which this court would review for clear error and would give significant deference to to what extent do me agent palat is not the opposing party in this case it's the u.s government so to what extent do we weigh the actions or inactions of the agents in new york who apparently went to mr vargas's house once i think you have to consider all of those actions but also a complicating factor that he was not the one effectuating the arrest which distinguishes the case from something like ingram for example where it was one agent who was working locally and he was the one who had to personally go agent palat reached out he followed up he was told in emails that somebody had driven by the house hadn't seen him that they would go back the following week another email i believe an agent said oh i'll get to that next week so he was led to believe that the agents in new york were something they could have done more absolutely let's assume that agent palat was diligent as the district court found what diligence is there after agent palat leaves in the middle of 2019 there isn't any um isn't that isn't that deadly for you because there's still 20 26 months without diligent efforts your honor i don't think that that is in any way fatal to the government's claim that the case sort of went silent for those 25 months um as judge lagoa pointed out earlier the pandemic did occur for a significant period of time which again the district court made a factual finding that that was a complicating factor but it also makes it similar to clark a case that this court has decided where um the case quote-unquote fell through the cracks for an extended period of time where um the the agent and clark was under the impression that the marshals were going to be effectuating the arrest and did absolutely nothing for months um to effectuate the arrest me counsel help me if i can with these facts as i understand it however even if you accept that palat was diligent for this 10 month period of time in september of 19 if i have the date right he was transferred by the dea from miami to mexico no longer on the case as of september of 19 correct yes your honor what if anything is done between september of 19 and the date that dea began to take account of covid which would have been the middle of march of 20 for that six month period of time nothing happens is that a fair statement i think so your honor and that's not the standard that the government aspires to no no i'm just trying to take it piece by piece let's assume we agree or at least find there's no clear error in the trial court's finding about the first 10 months and plot and romaine as supervisor then you've got a six month period before covid where nothing happens at all correct yes your honor and then you have the pandemic which runs from honor about the 19th of march of 20 through the time when he comes through immigration on 7 18 21 right yes your honor we know he re-enters the country on 7 18 21 presumably there would be a record of when he left the united states is there any such evidence in this record i'm not aware of any evidence that specifically shows when he left so the fact that he was out of the country for a short period of time would really be of no moment in calculating whether or not the united states was sufficiently diligent here right i don't think it's a time period that we could eliminate because we don't have a specific amount of time that he was out of the country but i think it does emphasize um the added difficulty in locating him again after releasing him because he had to be rearrested it's not necessarily so simple as assuming he's at his residential address in new york miss folders suggested we ought to be drawing still another inference from the fact that he was stopped by immigration coming in from the dominican republic on july 18 21 immigration calls dea and then they release him even then i think should we be drawing an inference from the fact that the government didn't see fit even 33 months later or 34 months later when he was walking right through immigration and they could have apprehended him they released him i would draw from that if any well it's not in the record your honor but the there was a miscommunication when he did come through immigration and by the time an agent did show up to arrest him he had already been released um but that there's no record evidence that as you say is not in the record correct your honor um but it was agent palazzo diligence and entering him into the epic database which triggered that notice and alerted dea to his presence and that ultimately resulted in them tracking him down at his residence the following month um once they were aware of his whereabouts again so it did ultimately lead to his arrest although slightly later than his re-entry miss panuccio i have i may not have read this in record but when he was um detained i guess coming back from the dominican republic was he informed that there was an arrest warrant out for him uh yes i believe that he was but he knew that he was in legal jeopardy from the date of his initial arrest when he confessed to the crime everything was recorded i understand that it but it it goes to the point that he knew at that point that an arrest warrant had been issued for him and he didn't contact anyone for the government or an agent to inquire yes your honor that's correct but despite that i mean if we're if we're applying the clear error standard firmly the district court found that he had timely asserted his right to a speedy trial even though he had been informed by immigration authorities that he had an outstanding charge against him right yes that's correct well the district court found that his assertion of his right to a speedy trial did not weigh against him or the government um but but the district court unlike the magistrate judge said that his exertion of his speedy trial rights was timely right yes that's correct your honor help me with this no please oh i was just going to mention even assuming that that factor did weigh against the government or even weigh heavily against the government um that still isn't sufficient because the other barker factors like the district court found did not weigh heavily against the government so he's still not excused from showing actual prejudice all right so let's zero right in at what's at issue we all agree that under the controlling law the first three barker factors have to uniformly weigh heavily against the government that's the one and three weigh against the government so the only dispute here is the reason for the delay correct i think that's um what the district court found was the crux of the dispute yes you're not disputing then that factors one and three weigh against the government or are you one is the length of the delay no question the delay was 35 months that's more than enough to weigh heavily against the government right we would agree with the district court that the length of the delay weighs against the government not that it weighs heavily against the government you mean it had to be 75 months to weigh heavily uh the supreme court and this court has resisted drawing any sort of line as far as a specific number of months there have been cases with greater and lesser delays that have gone both ways right and the third factor there's no dispute here about essentially timely perfecting the motion right i'm just going to get down i just want to get down to what's really at issue and what's really an issue it seems to me is whether or not the second factor the reasons for the 35 month delay weigh heavily against the government tell me in your own words why it does not weigh heavily against the government i think that all starts with why we're in this position which judge lagoa pointed out at the beginning of this argument but for barbus's promise to cooperate he would never have been released after he was initially arrested and confessed to his crime so because of his choice and unlike what opposing counsel says that we don't know why the cooperation didn't continue we know exactly why from the record um he he said that he didn't want to cooperate he no longer answered phone calls from the undercover agent even though he was telling him the case was not going away so this all started because he reneged on his promise to cooperate which meant that our local agents had to rely on agents in a different jurisdiction to effectuate the arrest which really complicated matters um agent plot spent i wouldn't overstate that miss panuccio after all the dea has an awfully large office in new york it's not as if you know they had a legate in rome or in istanbul that we're looking about we're talking about you know dea's largest office in the united states if i'm right is in new york city and perhaps that contributed to some of the confusion about which agents in new york actually should be effectuating this arrest but he did spend 10 months contacting multiple different agents and divisions in new york in the marshals were involved um had he and his supervisor sent emails had phone calls which are alluded to in those emails he entered um the information into the fugitive databases which ultimately led to vargas's rearrest um and then you know the case did fall through the cracks when he was transferred which again is similar to clark where this court still found that the was required to show actual prejudice and then we come to the pandemic which this court found which the district court found was a complicating factor um so i think overall when you look at the reason for the delay there's no evidence of bad faith or the type of conduct that would commonly be found to weigh heavily against the government the government could have done more during certain periods of that time and should have done more um but that does not automatically mean that the conduct was insufficient or that if there's negligence that that weighs heavily against the government thank you okay thank you very much miss panuccio thank you your honors um miss folders it would be very helpful for me if you focus just on the second factor we all agree or at least speaking for myself and you've already heard what judge jordan had to say on it factors one and three caught clearly against the government there's no dispute about that there's presumed prejudice this case boils down to the reasons for the delay we have a delay of 35 months and as i understand the government's position and i want you to help me with what's wrong with it taking it apart piece by piece the first 10 months there's a finding that the agent was diligent let's just accept that that is in clear error for the time being then we have a period of six months where the government sits on its thumbs and does nothing before the pandemic begins and then you have the onset of the the pandemic which takes up the balance of the period of time the heart of their argument is a no bad faith b he was released on his own recognizance he wasn't in jail c for at least a reasonable period of the first 10 months they tried sufficiently reasonably to be diligent and the last portion of time doesn't weigh heavily against the government because of the circumstances of the pandemic and the prophylactic measures that just about every agency took in order to shield and protect their employees tell me what about this period of time yields the conclusion that the reasons for the delay weigh heavily against the government accepting that that's the standard and you're talking about the entire deal yeah oh i think you have to look at it as a whole but i was just breaking it into pieces because the first 10 months you have a hard argument to make given the finding of fact made by the trial court um you have no difficulty with the next six months when they do nothing before the pandemic and then you have this extended period of the pandemic when they weren't out on the streets in the same way so how does that last period of time weigh heavily against the government this covid issue okay i was uh going to start with just the beginning sure okay so with respect to um agent palat i actually think that you can review de novo because the facts really are not in dispute as to what he did it's a matter of applying what the case law says is diligent and a handful of emails is not i can actually specify for you let me just ask you a sort of a prefatory question is it not a finding of fact that the agents were or well it's an application of the facts to the law do you think it's a mixed question not a pure finding of fact and not reviewing for clear error but de novo that's correct um and that's because the facts there are undisputed as to what he did he also testified at the evidentiary hearing and he didn't really go beyond those emails what he did in those emails is what he did and it's very important to look actually at those emails because there is a total of nine days over the course of that first year that's how many emails were sent out of the office by everybody let me ask you judge jordan had asked this question of miss panuccio how many contacts in all that agent palat make to the new york office whether by email right he made by phone call parry you know carrier pigeon i don't know how many times did the agent in miami reach out for his counterparts in new say we want you to arrest this guy so the combined evidence at the evidentiary hearing his testimony plus the emails he doesn't talk about other conversations he's had he talks about the emails give me the number he's got eight emails over the course there are eight emails and what about the contacts that romaine makes how many of those there is a couple maybe two more so there a total of at least 10 9 to 10 emails for the entire year okay help me with because time is short here help me with you don't have to help me with the six months where they sat on their thumbs and did zero but help me with the advent of covid why isn't that a reason of sufficient import to the united states wasn't that a pretty good reason that they were protecting the safety of their agents there there are two reasons your honor one is that the as an evidentiary matter the district court did not find any evidence that covid impeded the arrest and then the second thing is because of the nature of mr vargas's case where he was not considered a flight risk they were not you know worried that he was going to leave they released him when he came back into the country all of that made him the the premium type of person to be able to self-surrender he wasn't going to be in jail because he was going to be on bond so they didn't have to worry about facility issues with bop or any of that they didn't even really have to go to his house they could have had him self-surrender because he was responding and how was and whatever they're going to have himself surrender when agent palette testified that he no longer answered the phone call of the undercover agents who tried to reach out to him okay so he was in contact with the agents when they wanted him to be there was an allegation by agent palette that there was one phone call that he had not returned and that was to an agent that quickly left the office so we're not even sure there was no evidence in the record to show that mr vargas actually got that phone call or to show what happened in time wise when that phone call happened because the agent who made that phone call left the dea office in november of 2018 it was very short after the indictment so it's very possible that mr vargas could have responded back to that phone call but the agent had already left so i don't think that that he he responded and there was also evidence in the the hearing that he actually did respond to that same agent on other occasions so i think that it could not be drawn against him that for that one phone call because there's no evidence to show that that was intentional last question at least for me during that so-called covet period and let's assume it runs from march of 2020 all the way through time that he is stopped by immigration authorities in july of 21 okay so that's the bracketed period what evidence is there in the record of what anybody in the dea did during that period of time during that period of time is that was part of the silent time so there's no evidence that anybody did anything the only thing that happened was he got detained at the airport by immigration and then immigration contacted dea and dea the result of that consultation was that he was released to his home he wasn't even on bond and then they let that sit for another month before they actually did go to his home which is exactly where he was and that's when they arrested him i've got just one final question if you can help me with this the district court the trial court found no bad faith here on the part of the government you're not challenging that and saying that was clear error are you no we're not saying that there was bad faith bad faith is not necessary for this no i i do understand that but i'm just but not a dispute about the finding of the trial court that there was no bad faith on the part of the united states they may have been really really negligent but it i actually think it's a slightly different it we're not asserting bad faith but what we are asserting because of that email from the supervisor is that this is not only gross negligence this is not just a lack of diligence but this is a lack of diligence on top of knowledge and notice that is what that one email makes super clear it was sent by a dea supervisor who was in charge of the in the office and it was very aware of the case and it made it clear you get the arrest done or you get the case dismissed and that so it's not only knowledge of negligence it's knowledge of what the consequences are for that what was the uh what was the date on that one january 9 but hold on for a second i'll double check okay that's a 1 9 19 january 9th that's the one from romaine to palat regarding the status of the arrest right okay and i will just say too that um the it is correct in my briefs there was one email that i did miss which was january 10th uh so i would just add that in there as well i can submit a i had a little table which i but there was one extra but total there was approximately 10 emails of the people going back and forth it was on nine days there was approximately eight emails that agent palat sent and there was a couple more that his supervisor sent for that entire year and the testimony by agent palat at the evidentiary hearing did not go beyond those emails so there's nothing in the evidence that would take it beyond what what you see there all right thank you very much thank you